IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID JOSEPH ELKINS,                                      CV. 08-799-PK

                                                         FINDINGS AND
                                                         RECOMMENDATION

                            Plaintiff,

v.


CITY OF PORTLAND et al.

                            Defendants.
———————————————————

PAPAK, Magistrate Judge:

        Plaintiff David Elkins, appearing pro se, brings this action under 42 U.S.C. § 1983

alleging violations of his rights secured by the Fourth and Fourteenth Amendments, and also

brings various supplemental state law claims.  Elkins alleges that the Portland Police Bureau

used aircraft to follow his movements.  Defendant Rosie Sizer is the chief of police for defendant

City of Portland and defendants Slauson and Goldschmidt are members of the Portland Police

Aerial Support Unit.  This court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.  Defendants'

Page 1 - FINDINGS AND RECOMMENDATION

rule 12(b)(6) motion to dismiss is now before the court.  Defendants' motion should be granted,

for the reasons set forth below.

### LEGAL STANDARD

A court should dismiss a complaint for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6) if the complaint does not "raise a right to relief above the speculative level"

on the assumption that all the allegations in the complaint are true.  *Bell Atl. Corp. v. Twombly*,

127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (citation omitted) (footnote omitted).

"[C]onclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion

to dismiss."  *Associated Gen. Contractors of Am. v. Metro. Water Dist. of So. Cal.*, 159 F.3d

1178, 1181 (9th Cir. 1998) (internal citation omitted).  In civil rights cases involving a plaintiff

proceeding pro se, this court construes the pleadings liberally and affords the plaintiff the benefit

of any doubt.  *See Karim-Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 623 (9th Cir.

1988).  That is, courts hold pro se pleadings to a less stringent standard than those drafted by

lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  A pro se litigant is entitled to notice of

the deficiencies in the complaint and an opportunity to amend, unless the complaint's

deficiencies cannot be cured by amendment.  *See Karim-Panahi*, 839 F.2d at 623-624.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations

contained in the pleadings, exhibits attached to the complaint, and matters properly subject to

judicial notice."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  In considering a

motion to dismiss, the court accepts all of the allegations in the complaint as true and construes

them in the light most favorable to the plaintiff.  *See Zimmerman v. City of Oakland*, 255 F.3d

734, 736 (9th Cir. 2001).  Moreover, the court "presume[s] that general allegations embrace

those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994), *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court need not, however, accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## BACKGROUND

Elkins' complaint sets forth in detail several instances, from 2003 through 2008, when he has observed aircraft that appeared to be following his movements in public spaces in and near Portland, Oregon. Elkins filed his complaint in October 2008. The complaint names the City of Portland, individual Portland Police Bureau officers, and John Does as defendants. The complaint further alleges that defendants Slauson and Goldschmidt acted "within the course and scope" of their employment and that defendant Sizer "was responsible for the officers under her command."

The complaint describes several incidents of alleged aerial surveillance conducted by the Portland Police Bureau within the two years preceding the complaint. These include an incident when Elkins observed a Portland Police Bureau aircraft follow him as he left the area of an anti-war protest downtown. The complaint alleges that the police report of the flight stated that plane left the area of the protest to assist in a search for cars that were drag racing. Two other incidents, in June and September of 2007, involved a plane that looked like the Portland Police Bureau aircraft, but plaintiff was unable to confirm its owner. Plaintiff was able to confirm that the plane he suspected of following him on two other occasions, in March and April of 2008, did belong to the Portland Police Bureau. Elkins alleges that the F.B.I. conducted aerial surveillance of his movements on several other occasions.

Page 3 - FINDINGS AND RECOMMENDATION

Elkins asserts six claims for relief.  These include a claim under 42 U.S.C. § 1983 for deprivation of his Fourth and Fourteenth Amendment rights to due process of law and to be free from unreasonable searches.  Elkins also asserts state causes of action for stalking, in violation of Oregon Revised Statutes sections 163.732 and 30.866, intentional infliction of emotional distress and negligence.  Finally, Elkins' complaint also includes a claims for civil conspiracy and "Creating a Claim for Relief When No Relief Exists."

## DISCUSSION

## I.    Dismissal on Grounds that Claims Are Frivolous

"Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atl. Corp.*, 550 U.S. at _____, 127 S. Ct. at 1965 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Swartz*, 476 F.3d at 764.  Although "it may appear on the face of the pleadings that a recovery is very remote and unlikely . . . that is not the test." *Id.*  "[A] court's role at the 12(b)(6) stage is not to decide winners and losers or evaluate the strength or weakness of claims." *Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288, 1292 (9th Cir. 1997).

Here, defendants urge the court to dismiss all of Elkins' claims on the ground that they rely on factual allegations that are "clearly baseless."  It is not for the court, however, to make that determination.  Although the facts in the complaint "stretch credulity," that is not a proper ground to dismiss plaintiff's claims under Rule 12(b)(6).  *See Allison v. California Adult Authority*, 419 F.2d 822, 823 (9th Cir. 1969).

I.      **Federal Claims**

        **A.  Civil Right Violation Under 42 U.S.C. § 1983**

        A plaintiff who asserts a § 1983 claim must allege: "(1) that a right secured by the

Constitution or laws of the United States was violated, and (2) that the alleged violation was

committed by a person acting under the color of State law." *Long v. County of Los Angeles*, 442

F.3d 1178, 1185 (9th Cir. 2006).  Section 1983 "is not itself a source of substantive rights, but a

method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137,

145 n.3 (1979).  Here, Elkins' complaint alleges that the defendants' aerial surveillance violated

his rights under the Fourth and Fourteenth Amendments of the U.S. Constitution as well as

"Oregon's statutory constitutional rights."

        The Fourteenth Amendment provides that no state shall "deprive any person of life,

liberty, or property without due process of law. . . ." U.S. Const. Amend. XIV, § 1.  A plaintiff

may assert three kinds of § 1983 claims under the Due Process Clause of the Fourteenth

Amendment.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  First, a plaintiff may bring suit

under § 1983 for state officials' deprivation of his rights secured by the Bill of Rights and applied

to the states through the Fourteenth Amendment.  *See id.*  Second, a plaintiff may bring a

procedural due process claim for a deprivation of a constitutionally protected interest without

due process of law."  *Id.* at 126.  Third, "the Due Process Clause contains a substantive

component that bars certain arbitrary, wrongful government actions."  *Id.* at 125.

        Here, one reading of the complaint suggests that Elkins contends the alleged aerial

surveillance violated his Fourth Amendment rights, as applied to the states through the

Fourteenth Amendment.  An individual may claim the protections of the Fourth Amendment if

that person "can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *United States v. Knotts*, 460 U.S. 276, 280 (1983). However, "[a] person traveling . . . on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *Id.* at 281.

All the incidents of aerial surveillance that Elkins complained of occurred while Elkins was in public. Elkins has no federally protected privacy interest in his public whereabouts. Therefore, Elkins cannot prevail under his Fourth Amendment theory.

Elkins' complaint also suggests that he seeks to assert his rights under Article I, section 9 of the Oregon constitution as the basis for his § 1983 claim. Article I, section 9 provides, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search." Or. Const. art. 1, § 9. In *State v. Campbell*, the Oregon Supreme Court rejected the Supreme Court's reasoning in *Knotts* and held that, as a matter of state law, the use of a radio transmitter to track an individual's movement in public constituted a search under Article I, section 9. 306 Or. 157, 172 (1988).

Section 1983, however, "offers no redress" when "the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution." *Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001) (plaintiffs' allegation that blood test violated state law failed to state a constitutional deprivation); *Picray v. Sealock*, 138 F.3d 767, 770 (9th Cir. 1998) (plaintiff's argument that Oregon law did not authorize his arrest did not give rise to a liberty interest beyond that protected by the Fourth Amendment). Although in certain situations state law can create a liberty interest protected by the Fourteenth Amendment's due process clause, *Picray*, 138 F.3d at 770, Oregon's Article I, section 9 does not do so here.

Page 6 - FINDINGS AND RECOMMENDATION

Federal law holds individuals have no privacy interest in their movements in public.  In the Fourth Amendment context, *Knotts* holds that Elkins has no protected privacy interest. 460 U.S. at 280.  That holding eliminates any claimed federal liberty or property interest in the privacy of one's public movements.  *See Picray*, 138 F.3d at 770 ("Where an amendment provides an explicit textual source of constitutional protection against a particular government behavior, it is that Amendment, not the guarantee of due process, that must be the guide for analyzing the opinion.") (internal citation omitted).  Accordingly, defendants' motion to dismiss Elkins' claim under 42 U.S.C. § 1983, his Third Claim for Relief, should be granted.

Although it seems unlikely that Elkins will be able to state a claim under 42 U.S.C. § 1983, he should have leave to amend.  As a pro se litigant, he should have an opportunity to correct the deficiencies in his complaint.  Upon amendment, Elkins must truthfully allege facts that demonstrate, at a minimum, that the unlawful surveillance followed his movements in spaces that were not open to the general public.

**B.    Claim for Relief "When No Relief Exists Under State Law"**

Elkins' states "Creating a Claim for Relief When No Relief Exists Under Federal and State Law" as his Fifth Claim for Relief.  The claim consists solely of this heading, with no citation to any facts or legal basis for relief.  Therefore, it should be dismissed with leave to amend.  Upon amendment, Elkins must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).[1]

---

[1] Elkins asserts that his Fifth Claim for Relief states a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201.  The Declaratory Judgment Act serves to relieve potential defendants from the threat of impending litigation from a "harassing adversary" who may "initiate suit at his leisure or never." *Societe de Conditionnement en Aluminum v. Hunter Engineering Co.,* 655 F.2d 938, 943 (9th Cir. 1981).  Thus, the Act allows a potential defendant

## II.    State Claims

### A.    Proper Defendants

Under the Oregon Tort Claims Act, a plaintiff who sues over a municipal officer's tortious conduct must name the municipality - not the individual officer - as the defendant.  Or. Rev. Stat. § 30.265(1) (2007); *Haase v. Eugene*, 85 Or. App. 107, 110, 735 P.2d 1258 (1987). The Act does, however, allow a plaintiff to name an individual officer as a defendant if the tortious conduct occurred outside the scope of the officer's duties or employment.  *See* Or. Rev. Stat. § 30.265(1).  "For an act to fall within the scope of employment, it must be of a kind which the employer was hired to perform, must have occurred within authorized time and space, and the employee must have been motivated, at least in part, by a purpose to serve [the employer]." *Haase*, 85 Or. App. at 110-111.

Here, Elkins asserts his state claims against both the City of Portland and individual defendants.  The complaint alleges that defendants Slauson and Goldschmidt acted "within the course and scope" of their employment and that defendant Sizer "was responsible for the officers under her command."  Thus, under the current allegations, the City of Portland is the only proper defendant in the state law claims.  Therefore, the state law claims against defendants Slauson, Goldschmidt and Sizer should be dismissed with leave to amend.  Upon amendment, Elkins may state a claim against the individual defendants if he can truthfully allege facts that establish that they were not acting within the scope of their duties or employment.

---

to seek relief in the form of a declaratory judgment, 28 U.S.C. § 2201, but does not itself provide the substantive basis for a claim.

**B.    Stalking**

Under Oregon Revised Statute § 30.866, a person may bring a civil action in a circuit court for damages against a person who "intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person . . . thereby alarming or coercing the other person." Or. Rev. Stat. § 30.866(1)(a).  "Alarm means to cause apprehension or fear resulting from the perception of danger" and "coerce means to restrain, compel or dominate by force or threat."  Or. Rev. Stat. § 163.730(1),(2).  The resulting alarm or coercion must be an "objectively reasonable" response to the contact.  Or. Rev. Stat. § 30.866(1)(b).  Finally, the contact must cause the person to have a reasonable apprehension regarding his or her personal safety or the safety of the person's immediate family or household.  Or. Rev. Stat. § 30.866(1)(c).  Oregon Revised Statute § 163.732 provides that stalking is a criminal offense.[2]

Here, Elkins' response to defendants' motion to dismiss his stalking claim explains that he is alarmed at the alleged surveillance because it is "a concerted, expensive endeavor."  He does not allege any fear for his personal safety, although his complaint describes his feelings as "being followed by a patrol car with is lights flashing, but it never intends to pull me over or truly confront me."  Moreover, even if Elkins has alleged subjective fear for his personal safety, that fear is not an objectively reasonable response to aerial surveillance, which is necessarily conducted at a distance.  Elkins has not provided any "context giving the relevant contacts added import or ominous meaning" that would provide a basis to support an objectively reasonable fear for his personal safety.  *See Weatherly v. Wilkie*, 169 Or. App. 257, 262, 8 P.3d 251 (2000)

---

[2]Elkins cites both the criminal and the criminal stalking statute as the basis for his stalking claim.  Only the civil statute applies in this civil suit.

(holding that "ostensibly innocuous contacts," without "a history of prior violence, explosive emotions, unstable behavior, or threatening dealings," or other context that would suggest a threat, did not give rise to objectively reasonable fear). As a result, Elkins' stalking claim should be dismissed with leave to amend. Upon amendment, Elkins must truthfully allege facts that demonstrate the aerial surveillance was a contact that caused an objectively reasonable fear for his personal safety.[3]

### C.    Intentional Infliction of Emotional Distress

"To state a claim for intentional infliction of severe emotional distress, a plaintiff must plead that (1) the defendant intended to inflict severe emotional distress on the plaintiff," (2) the defendant's acts caused the plaintiff's severe emotional distress, and (3) "the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *Sheets v. Knight*, 308 Or. 220, 236, 779 P.2d 1000 (1989). "A trial court plays a gatekeeper role in evaluating the viability of an IIED claim by assessing the allegedly tortious conduct to determine whether it goes beyond the farthest reaches of socially tolerable behavior and creates a jury question on liability." *House v. Hicks*, 218 Or. App. 348, 358, 179 P.3d 730 (2008); *see also Pakos v. Clark*, 253 Or. 113, 132, 453 P.2d 682 (1969) ("It was for the trial court to determine, in the first instance, whether the defendants' conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.")

---

[3]Although the parties do not address the issue, this court questions whether aerial surveillance constitutes a "contact" within the meaning of the statute. *See* Or. Rev. Stat. § 163.730(3). While not all conduct must involve "direct oral or visual connection" with the perpetrator to constitute a contact, it must, when the plaintiff learns of it, give "rise to an unwanted relationship or association" between the perpetrator and the plaintiff. *Boyd v. Essin*, 170 Or. App. 509, 517, 12 P.3d 1003 (2000).

Courts conduct a "fact-specific" inquiry to determine whether conduct is extreme of outrageous, *House*, 218 Or. App. at 358. The court first inquires whether defendant has a special relationship to the plaintiff that "imposes on the defendant a greater obligation to refrain from subjecting the victim to abuse, fright, or shock than would be true in arm's-length encounters among strangers." *Id.* at 360. Thus, "courts are more likely to categorize conduct as outrageous when it is undertaken by the dominant party in a legal relationship." *Id.* at 364. Other factors include whether the defendant acted to "advance an unlawful or otherwise illegitimate end"or "to take advantage of an unusually vulnerable individual." *Id.* at 360, 365 n.6. The court also considers the setting in which the conduct occurs, for example, whether it occurred in a public venue or in an employment context. *Id.* at 360.

Here, the alleged aerial surveillance does not amount to extreme and outrageous conduct. Even assuming that law enforcement officials' power imposes a greater obligation to refrain from subjecting individuals to abuse, fright or shock, that does not render their conduct extreme and outrageous in every situation where a plaintiff alleges distress. *See Pakos*, 253 Or. at 128 (officers' routine theft investigation and subsequent refusal to tell plaintiff whether a warrant had been issued for his arrest was not extreme and outrageous). Moreover, Elkins does not allege facts to suggest that he is unusually vulnerable and defendants were aware of that fact. Finally, the alleged aerial surveillance occurred in public spaces. Accordingly, I conclude that Elkins has not alleged facts that establish defendants engaged in extreme and outrageous conduct. Therefore, Elkins' intentional infliction of emotional distress claim should be dismissed with leave to amend. Upon amendment, Elkins must truthfully allege acts by the defendants, beyond mere aerial surveillance, that exceed "the farthest reaches of socially tolerable behavior." *House*,

Page 11 - FINDINGS AND RECOMMENDATION

218 Or. App. at 358.

    **D.**    **Negligence**

To state a negligence claim, a plaintiff must establish: (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct caused the plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent. *Solberg v. Johnson*, 306 Or. 484, 490-91, 760 P.2d 867, 870 (1988); *see also Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 777 (9th Cir. 2002) (listing elements of negligence under Oregon law). Thus, "under Oregon common law, a person whose negligent conduct unreasonably creates a foreseeable risk of harm to others and causes injury to another ordinarily is liable in damages for that injury." *Harris v. Suniga*, 344 Or. 301, 307, 180 P.3d 12 ( 2008).

Not all negligently inflicted harms, however, give rise to a negligence claim. *Lowe v. Philip Morris USA, Inc.*, 344 Or. 403, 410, 183 P.3d 181 (2008). Psychic injury alone is insufficient to state a negligence claim except in limited circumstances. *See Hammond v. Central Lane Communications Center*, 312 Or. 17, 22-23, 816 P.2d 593 (1991). The Oregon Supreme Court has recognized common law liability for psychic injury alone when "defendant's conduct . . . infringed some legally protected interest apart from causing the claimed distress," such as an invasion of privacy, unauthorized removal of a spouse's remains, interference with use and enjoyment of the land, and trespass to a home and conversion of personal property. *Nearing v. Weaver*, 295 Or. 702, 706 & n.4, 670 P.2d 137 (1983).

Here, Elkins' complaint alleges negligent supervision of the Portland police officers who conducted the aerial surveillance. Elkins, however, does not allege the harm that resulted from this alleged negligence. Moreover, to the extent that Elkins relies on psychic injury alone, he will have to allege a violation of an interest protected under Oregon law. Accordingly, Elkins' claim should be dismissed with leave to amend.

**III.    Civil Conspiracy Under State and Federal Law**

**A.    State Law**

Under Oregon law, conspiracy is not a separate theory of recovery. *See Bonds v. Landers*, 279 Or. 169, 175, 566 P.2d 513 (1977); *Bliss v. Southern Pacific Co.*, 212 Or. 634, 642, 321 P.2d 324 (1958). "Rather, conspiracy to commit or aiding and assisting in the commission of a tort are two of several ways in which a person may become jointly liable for another's tortious conduct." *Granewich v. Harding*, 329 Or. 47, 55, 985 P.2d 788 (1999). Thus, "[t]he damage in a civil conspiracy flows from the overt acts and not from the conspiracy." *Bonds*, 279 Or. at 175; see also *Schmitz v. Mars, Inc.*, 261 F. Supp. 2d 1226, 1233 (D. Or. 2003) ("Plaintiff cannot state a separate common law claim based on conspiracy.").

A person may be liable jointly for another's torts if that person: "1) does a tortious act in concert with the other or pursuant to a common design with him"; or 2) knows that the other's conduct constitutes a breach of duty and  assists in or encourages that conduct; or 3) "gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." *Granewich*, 329 Or. at 53-54. "[I]n the absence of any allegation whatever to indicate that the agents of the corporation were acting in other than their normal capacities, plaintiff has failed to state a cause of action

based on conspiracy."  *Bliss*, 212 Or. at 643-44 (internal quotation and citation omitted).

Here, Elkins alleges that the Portland Police and the F.B.I. conspired to deprive him of his constitutional rights and to commit intentional torts.  Because civil conspiracy is not a separate common law claim under Oregon law, it should be dismissed with prejudice.  Elkins' civil conspiracy allegations rise and fall with his other state causes of action.

### B.      Federal Law

Although Elkins' complaint lists conspiracy as a supplemental state law claim, it also alleges a "deprivation of rights."  If I construe his pro se complaint liberally, I discern that it possibly seeks to assert a cause of action under 42 U.S.C. § 1985.  "Section 1985 proscribes conspiracies to interfere with certain civil rights." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988).  A § 1985 claim "must allege facts to support the allegation that defendants conspired together.  A mere allegation of conspiracy without factual specificity is insufficient." *Id.* (internal citations omitted). Moreover, "to state a claim for conspiracy under § 1985, a plaintiff must first have a cognizable claim under § 1983." *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 930 (9th Cir. 2004).

Here, even if Elkins had pled sufficient facts to allege a conspiracy under 42 U.S.C. § 1985, that claim should be dismissed because the § 1983 claim should be dismissed, as explained above.  Elkins, as a pro se litigant, however, should have leave to amend.  Upon amendment, Elkins must both address the deficiencies in his § 1983 claim and allege specific facts to support his conspiracy allegation.

### CONCLUSION

Defendants' Motion to Dismiss (#9) should be granted in its entirety and plaintiff should

Page 14 - FINDINGS AND RECOMMENDATION

have an opportunity to amend the complaint to address the deficiencies set forth above.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due January 2, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de novo consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.


Dated this 18th day of December, 2008.


/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge


Page 15 - FINDINGS AND RECOMMENDATION